## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

_____

TAMBERLY T. BROCKMAN, on behalf of
herself and others similarly situated,

          Plaintiff,

   v.

MANKIN LAW GROUP, P.A.,

          Defendant.

_____

: **Civil Action No. 8:20-cv-893-T-35JSS**
:
:
:
: **PLAINTIFF'S UNOPPOSED MOTION**
: **FOR PRELIMINARY APPROVAL OF**
: **CLASS ACTION SETTLEMENT**
:
:
:
:
:
:

### Introduction

This class action under the Fair Debt Collection Practices Act ("FDCPA") concerns Mankin Law Group, P.A.'s ("Defendant") dissemination of thousands of initial debt collection letters to Florida consumers. Tamberly T. Brockman ("Plaintiff") received one such letter and here alleges that Defendant violated the FDCPA's validation notice requirements by demanding in its collection letters that any disputes from consumers be made in writing, rather than by telephone or in person at Defendant's offices. Defendant denies any wrongdoing or that its letters violated the law, but the parties nonetheless have reached a class settlement to avoid lengthy and time-consuming litigation.

By way of the parties' agreement, Defendant will create a non-reversionary class settlement fund of $24,000, from which participating class members will receive equal shares. It is anticipated that claimants will receive between $30 and $60 each, given historical participation rates in consumer protection class actions. The size of the class fund is notable because, based upon Defendant's balance sheet, or book value, net worth, it well exceeds the applicable

statutory damages cap under the FDCPA, thus ensuring class members monetary relief beyond what they likely could have recovered at trial.

Separate from the class fund, Defendant will pay Plaintiff $1,000 in statutory damages, plus an additional $2,000 in recognition of her service to class members, subject to this Court's approval. Defendant separately will pay all costs for class notice and administration of the settlement. As well, Defendant separately will pay a reasonable award of attorneys' fees, costs, and litigation expenses to class counsel in the agreed amount of $32,500, subject to the Court's approval.

Finally, and in direct response to this lawsuit, Defendant discontinued use of the form of initial collection letter over which Plaintiff complains. This change in Defendant's collections practices will provide prospective relief to thousands of class members and likely thousands more outside of the class who may become the target of Defendant's future collection efforts.

Given the outstanding benefits obtained for Plaintiff and absent class members, particularly considering the statutorily-limited damages available to them, Plaintiff and her counsel strongly believe that the settlement presented is fair, reasonable, and adequate, and in the best interests of the class. Plaintiff thus seeks preliminary approval of the class settlement, certification of the settlement class, her appointment as class representative, her counsel's appointment as class counsel, and this Court's approval of the class notice campaign described below. Importantly, Defendant, while disputing liability, does not oppose this relief.

**Class Settlement Summary**

I. **The settlement provides significant monetary relief for the class, plus Defendant has retired the form of debt collection letter at issue.**

A copy of the parties' settlement agreement is attached as Exhibit 1 to the accompanying Declaration of Jesse S. Johnson. That agreement defines a Rule 23(b)(3) settlement class

comprised of all persons (a) to whom Mankin Law Group, P.A. mailed to a Florida address an initial debt collection communication (b) not known to be returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) between April 17, 2019 and April 23, 2020, (e) that stated: "All disputes must be in writing." According to Defendant, there are approximately 3,900 potential class members, including Plaintiff.

Class members who submit timely and valid claim forms will receive a pro-rata share of the $24,000 settlement fund. Based on historical participation rates, Plaintiff estimates that each participating class member will receive between $30 and $60. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, the residual monies will be directed to Bay Area Legal Services—the *cy pres* recipient selected by the parties.

Additionally, Defendant has ceased using the specific form of debt collection letter at issue in this litigation. This is an important public benefit that might not have obtained had this case gone to trial. *See, e.g.*, *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1346 (S.D. Fla. 2008) ("Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. Defendant is correct that the FDCPA does not authorize injunctive relief to private litigants.").[1]

Defendant also will pay, separate and apart from the class settlement fund, $1,000 to Plaintiff as "additional damages" pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), plus an additional $2,000 in recognition of her valuable service to the settlement class members, subject to this Court's approval. Defendant separately will pay all costs of class notice and settlement administration, as well as an award of attorneys' fees, costs, and litigation expenses to class

---

[1]   Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

counsel in the agreed amount of $32,500—a figure negotiated *after* the remainder of the class settlement terms. Class counsel's fee award will be the subject of additional motion practice before this Court in advance of the final fairness hearing.

## II. The parties propose a robust direct mail notice campaign to all class members, at Defendant's expense.

The settlement agreement calls for a notice program that will provide direct mail notice to each class member, based on names and addresses from Defendant's business records. First Class, Inc. will administer the program and has extensive experience overseeing similar class action settlements, including within this district. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship,* No. 16-803, 2019 WL 311335 (M.D. Fla. Jan. 24, 2019) (Moody, J.); *Roundtree v. Bush Ross, P.A.*, No. 14-357, 2015 WL 5559461 (M.D. Fla. Sept. 17, 2015) (Whittemore, J.).

First Class will take all reasonable steps necessary to ensure that each class member receives direct mail notice, including mailing the notices with forwarding addresses requested and performing skip-trace searches for any notices returned undeliverable without an associated forwarding address. The class notices will include detachable, pre-addressed claim forms so that potential class members may confirm their class eligibility and that they wish to participate in the settlement fund. First Class will administer receipt of class members' claim forms and the printing and mailing of settlement checks upon this Court's approval. Defendant will pay for First Class's services separate and apart from class members' and Plaintiff's recoveries.

## Argument

## I. This Court should certify the proposed settlement class.

### A. The FDCPA is well-suited for class action treatment.

Preliminarily, it bears mention that class treatment of FDCPA claims is particularly appropriate because the statute imposes strict liability and is liberally construed in favor of

consumers. *Hepson v. J.C. Christensen & Assocs., Inc.*, No. 07-1935, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) (Lazzara, J.). Courts in this circuit use the objective "least-sophisticated consumer" standard to evaluate whether debt collection communications violate the FDCPA, rendering moot any particular class member's understanding of a disputed letter. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). At bottom, "[r]epresentative actions . . . appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004).

Bearing this in mind, to certify the proposed settlement class, Plaintiff and the class must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as one of the requirements of Rule 23(b). *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (certifying FDCPA class). Here, Plaintiff proposes a settlement class pursuant to Rule 23(b)(3), and because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### B. Settlement class members are so numerous that joinder is impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279

(M.D. Fla. 1986) (Melton, J.). The Eleventh Circuit held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Defendant mailed letters to approximately 3,900 persons in Florida between April 2019 and April 2020, each letter containing materially identical language to the one sent to Plaintiff, which she contends violates the FDCPA. The size of the class, coupled with members' geographic dispersion throughout the state, supports certification, as it is sufficiently numerous to render joinder impracticable. *See, e.g.*, *Williams v. New Penn Fin., LLC*, No. 17-570, 2018 WL 8584149, at *2 (M.D. Fla. Dec. 21, 2018) (Adams, Jr., J.) (certifying settlement class of 987); *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 694 (S.D. Fla. 2013) (preliminary showing of at least 48 sufficient to meet numerosity); *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (numerosity satisfied with estimated class size of at least 50 persons); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 670 (S.D. Fla. 1997) ("[T]he wide geographic dispersion of the class members both nationwide in Count I, and throughout Florida in Counts II and III, supports a finding of impracticability of joinder.").[2]

### C. There are issues of fact and law common to all proposed class members.

Rule 23(a)(2) commonality requires that there be at least one issue common to all class members. *Drossin*, 225 F.R.D. at 615. However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996). The commonality element is generally satisfied when a plaintiff alleges that the "[d]efendant[] ha[s] engaged in a standardized course of conduct that

---

[2]    Moreover, there is no difficulty in identifying potential class members, as Defendant possesses the name and recent address of each class member.

affects all class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004).

Here, the questions of fact and law at issue are entirely common. Plaintiff asserts claims on her own behalf and that of the class that originate from the same conduct, practice, and procedure on the part of Defendant—namely, its issuance of standardized initial debt collection letters demanding that all disputes be made in writing. Thus, each member of the class has identical FDCPA claims based upon the same allegedly violative conduct. If brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. *See, e.g.*, *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 659 (M.D. Fla. 2015) (Whittemore, J.) ("Bush Ross issued standardized initial debt collection letters, charged and sought to collect fees incident to the collection of a debt, and included untimely debt collection disclosures in its foreclosure filings. The question of whether each of these actions by Bush Ross violates the FDCPA is a legal question common to all members of the putative class and requires proof of the same material facts.").

For these reasons, claims brought as a result of a form debt collection letter are routinely certified as class actions. *See, e.g.*, *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664 (S.D. Fla. 2014); *Klewinowski v. MFP, Inc.*, No. 13-1204, 2013 WL 5177865 (M.D. Fla. Sept. 12, 2013) (Covington, J.); *Lewis v. ARS Nat'l Servs., Inc.*, No. 09-1041, 2011 WL 3903092 (N.D. Ala. Sept. 6, 2011); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 08-493, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008) (Lazzara, J.); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004); *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665 (M.D. Fla. 1999) (Adams, J.).

Plaintiff's claims here on behalf of the class are no different and thus should be certified. *See Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 334 F.R.D. 326, 331 (S.D. Fla. 2020) ("Here, there is a common question of law shared by the entire class – whether the Template received by all class members violates the FDCPA. Thus, Plaintiff has established commonality.").

### D. Plaintiff's claims are typical of those of the class members.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although similar to commonality in that the inquiry concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to those of the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

"The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) (Schlesinger, J.) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations."). To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy." *In re Terazosin Hydrochloride*, 220 F.R.D. at 686.

But such is not the case here, as Plaintiff and the members of the class suffered by way of a common practice employed by Defendant. Through materially identical initial collection letters, Defendant attempted to collect debts while demanding that any disputes from class members be made in writing, which Plaintiff alleges violated multiple provisions of the FDCPA. To be sure, there is no doubt that Plaintiff is a member of the class and that her claims are typical

of those of the other members of the class. *See* ECF No. 1-1 (demonstrating that Plaintiff is a member of the class because Defendant sent her the violative letter at issue during the class period). Plaintiff thus possesses the same interests and has suffered the same injuries as each class member, and she asserts identical claims and seeks identical relief on behalf of the unnamed members of the class.

Correspondingly, Plaintiff's claims are typical of those of the class she seeks to represent. *See Agan*, 222 F.R.D. at 698 ("Parties seeking class certification have satisfied the typicality requirement by showing that all prospective class members received a variation of the same collection letter."); *Swanson*, 186 F.R.D. at 668 ("Because Plaintiff alleges that the notice itself was contradictory and misleading to the least sophisticated consumer and Plaintiff as well as the putative class received the notice, the Court finds that typicality has been shown."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *3 ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been satisfied.").

### E. Plaintiff and her counsel will fairly and adequately protect the interests of all class members.

Next, this Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To do so, a named plaintiff must show that she can act in a fiduciary role representing the interests of class members, and has no interests antagonistic to those of the class. *In re Ins. Mgmt. Solutions Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002) (Lazzara, J.) (certifying class action).

Plaintiff's claims are perfectly aligned with the claims of the class members. She is committed to vigorously pursuing the members' claims with their best interests in mind. Indeed, Plaintiff diligently pursued this case with the goals of (1) obtaining relief for the members of the

class, and (2) forcing Defendant to change its collection practices moving forward. By way of this settlement, Plaintiff achieved both.

Likewise, Plaintiff has retained the services of counsel—Greenwald Davidson Radbil PLLC ("GDR")—who are highly experienced in complex class action litigation, will vigorously prosecute this action, and will protect all absent class members. *See* Johnson Decl. at ¶ 7 (collecting cases). Accordingly, Plaintiff satisfies Rule 23(a)(4).

**F.  Plaintiff's counsel should be appointed class counsel.**

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class." GDR will continue to prosecute this action, as they have done to date, in an efficient and effective manner. In addition to satisfying the adequacy prong of Rule 23(a)(4), GDR also satisfies the considerations of Rule 23(g) and should be appointed as class counsel. *See, e.g.*, *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 3940256, at *3 (S.D. Fla. Aug. 19, 2019) (appointing GDR as class counsel); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) (Merryday, J.) (same); *Roundtree*, 304 F.R.D at 661 (same).

**G. Common questions of law and fact predominate over any individualized inquiries.**

Moving on to Rule 23(b)(3), the Supreme Court has counseled that the predominance "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The

objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits; permit adjudication of disputes that cannot be economically litigated individually; and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966). Thus, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

"Under Rule 23(b)(3)[,] it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4.

Here, common issues necessarily predominate because Plaintiff's claims are based on standardized conduct by Defendant through its dissemination of form debt collection letters. Courts within this circuit thus routinely find that claims based on form debt collection letters and standardized conduct satisfy the predominance requirement of Rule 23(b)(3). *See, e.g.*, *Sharf*, 295 F.R.D. at 671 ("Because the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA and FCCPA, common issues predominate."); *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) ("As to the FDCPA class, the Court finds that common issues predominate."); *Klewinowski*, 2013 WL 5177865, at *4 ("Furthermore, the common question to be decided is

whether the "YOUR CREDITORS" letter violates the FDCPA. This common issue predominates over any other issue presented in this matter, and thus, the requirement of predominance has been satisfied."); *Agan*, 222 F.R.D. at 701 ("The Court finds that Plaintiffs have satisfied Rule 23(b)(3) and that monetary damages are appropriate in this class action. The common issues presented by sending allegedly illegal form letters and claims of lien predominate over any individual issues presented, and the class action is the superior method for resolving this dispute because it would be uneconomical to litigate these issues individually."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4 (finding common issues predominate where "all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy").

As the Northern District of Alabama explained in certifying an FDCPA class action based upon an allegedly misleading form debt collection letter:

> In general, predominance is a test readily met in certain cases alleging consumer . . . fraud. Here, not only will class-wide issues of proof predominate, but it is unlikely that there will be any issues of individualized proof. To determine whether the collection letters sent by American Recovery Systems violated the FDCPA, the court will not need to question whether each class member was deceived or misled by the privacy notice, because the least sophisticated consumer standard governs. Additionally, the Court need not determine whether the named plaintiff or other putative plaintiffs read or were confused by the notice, as the standard is whether the least sophisticated consumer would have been misled. Thus, the only individualized proof necessary will be whether each class member received a letter identical to [the plaintiff's]. Since that is a prerequisite for joining the class, the court finds that common questions of fact and law predominate in this case.

*Lewis*, 2011 WL 3903092, at *5.

For these same reasons, Rule 23(b)(3) predominance is satisfied here.

**H. A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and Class members' claims.**

Finally, when evaluating the superiority requirement of Rule 23(b)(3), this Court must

consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

As the Eleventh Circuit explained, "[m]any courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017). This is in part because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016). Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015).

Because the claims in this case all arise from form debt collection letters, a class action is the superior vehicle for determining the rights of absent class members. In certifying FDCPA claims, the Southern District of Florida explained:

> The Court finds that resolving the issues raised by the Plaintiff in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. As explained above, common questions of law and fact predominate over any individualized issues. In addition, the Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating Plaintiffs' claims under the FDCPA[.]

*Muzuco v. Re\$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013).

Likewise, a class action here is the superior method to adjudicate Plaintiff's and the class's claims. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Agan*, 222 F.R.D. at 701 (finding a class action superior because, in part, "[d]ebtors who seek to change the unfair debt collection practices may lack the incentive to bring action under the FDCPA [] because successful plaintiffs are only awarded a maximum of $1,000").

## II. This Court should preliminarily approve the class settlement as fair, reasonable, and adequate under Rule 23(e).

Rule 23(e) requires that this Court make a preliminary determination of fairness for the class settlement presented:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

Once the preliminary fairness evaluation has been made and class notice has been issued, the Court then holds a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate

14

whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33.

A full fairness determination is not necessary at this early juncture; nevertheless, to aid in this Court's review, the Eleventh Circuit has identified six factors for analyzing the reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e) itself adds several additional factors for consideration, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to each other.

Here, Plaintiff is confident that each relevant factor supports the conclusion that the parties' settlement is fundamentally fair, adequate, and reasonable, and should receive approval. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Turner v. Gen. Elec. Co.*, No. 05-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (Steele, J.) ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

### A. There was no fraud or collision behind the parties' settlement.

To begin, "[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010). The parties' arm's-length settlement negotiations here demonstrate the fairness of the settlement that was reached, and that it is not a product of fraud or collusion. Counsel for each side zealously negotiated on behalf of their clients over the course of several weeks, resulting in the exchange of multiple written settlement demands and counteroffers, plus several lengthy telephone conferences among experienced counsel. Moreover, the parties' negotiations were informed by Defendant's provision of key informal discovery related to the class size and potential class damages, as detailed below. The first factor correspondingly favors approval here. *See Claxton v. Alliance CAS, LLC*, No. 19-61002, 2020 WL 2759826, at *2 (S.D. Fla. May 27, 2020) ("The proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members. The settlement was reached in the absence of collusion and is the product of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel, having adequate knowledge of the strengths and weaknesses of their claims and the defenses and the risks of proceeding with the litigation through a motion for class certification, trial, and appeal."); *accord Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

### B. The complexity, expense, and likely duration of the litigation favors preliminary approval.

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in

encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

This case was no different. While the parties reached a settlement relatively quickly and efficiently, had the litigation moved forward instead, Plaintiff and the class faced several obstacles. In addition to overcoming a potential Rule 12(b) challenge, Plaintiff would have had to obtain certification of a litigation class—as opposed to a settlement class—over Defendant's assured objection, and then prevail either at summary judgment or at trial, and ultimately likely on appeal, to obtain any benefits for members of the class. *See, e.g.*, *Bennett v. Behring Corp.,* 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

Aside from the complexity of these various certification- and merits-related issues, such extensive motion practice would have taken many months at a minimum, if not likely years. By comparison, the settlement at bar provides immediate compensation to nearly 4,000 potential class members. Also worth noting, because damages under the FDCPA are not mandatory (as explained further below), there is no guarantee that Plaintiff would have recovered any money for the class, even assuming a trial victory. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). Given these risks, as compared to the excellent results

obtained for the class members, preliminary approval is appropriate to avoid the uncertainties of trial. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

### C. The parties sufficiently developed the factual record through informal discovery to enable Plaintiff and her counsel to make a reasoned settlement judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that the parties had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, despite the early stage of these proceedings, the parties engaged in informal discovery about the merits of the claims, the propriety of class certification, the number and identities of potential class members, as well as Defendant's net worth—the sole determinant of the class's potential statutory damages award here. *See* 15 U.S.C. § 1692k(a)(2)(B). And "because this action is premised primarily upon a form collection notification letter . . . legal issues predominate the remaining disputes in this litigation." *Gregory v. McCabe, Weisberg & Conway, P.C.*, No. 13-6962, 2014 WL 2615534, at *9 (D.N.J. June 12, 2014). Thus, while the litigation has been pending for just a few months, the parties achieved settlement with a clear view as to the strengths and weaknesses of the case, and they could compare the benefits of the proposed settlement to further litigation.

Indeed, Plaintiff's counsel is well-versed in FDCPA class litigation, having litigated dozens of similar actions nationwide. *See* Johnson Decl. at ¶¶ 6-12. The settlement was therefore

consummated with a firm understanding of the parties' respective positions and the maximum potential recovery for the class. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits coupled with the range of possible recovery favor preliminary approval.

The Court also is to consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. at 314. In determining whether a settlement is fair in light of the potential range of recovery, this Court is guided by the important maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig*., 830 F. Supp. 2d at 1350.

Here, the class settlement fund amounts to more than the best theoretical statutory damages recovery for the class given the statutory limitation on such damages. *See* 15 U.S.C. § 1692k(A)(2)(B) (limiting class statutory damages to the lesser of $500,000 or one percent of the debt collector's net worth). While the parties may disagree about the proper way to calculate Defendant's net worth, the $24,000 settlement fund well exceeds one percent of Defendant's balance sheet net worth. *See, e.g.*, *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities); *compare Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259, 261 (E.D. Pa. 2004) (although FDCPA limited recovery to one percent of debt collector's net worth, its net worth included equity, capital stock, and goodwill).

Also noteworthy, there is no guarantee of full statutory damages at trial because the

FDCPA's damages provision is permissive rather than mandatory; the statute provides for awards *up to* certain amounts after balancing specified factors like the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2).

It follows that, even had Plaintiff and the class prevailed at trial, the jury still could have awarded little in the way of statutory damages, or potentially none at all. And this risk of a minimal damages award in an FDCPA class action was not merely hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) (Moody, J.) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

Given the foregoing, the immediate relief provided by the settlement is significant, and a recovery of $30 to $60 per claimant represents a great result for class members well in line with other recent FDCPA class settlements. *See, e.g.*, *Sullivan v. Marinosci Law Grp., P.C., P.A.*, No. 18-81368, 2019 WL 6709575, at *2 (S.D. Fla. Nov. 22, 2019) ($27.51 per class member); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-803, 2019 WL 2280456, at *2 (M.D. Fla. May 28, 2019) (Scriven, J.) ($10 per person); *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150, at *4 (D. Me. Feb. 21, 2017) ($42 per class member); *Cobb v. Edward F. Bukaty, III, PLC*, No. 15-335, 2016 WL 4925165 (M.D. La. Sept. 14, 2016) ($52.28 each); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D.

Pa. Sept. 13, 2016) ($10.92 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, No. 15-3948, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (same); *Whitford v. Weber & Olcese, P.L.C.*, No. 15-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member); *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 each).

What's more, Plaintiff obtained her maximum potential individual damages award of $1,000, *see* 15 U.S.C. § 1692k(a)(2)(A), and secured Defendant's confirmation that it no longer uses the form of debt collection letter at issue—an achievement that was not necessarily available at trial. This prospective relief will benefit countless consumers in the future who become the subject of Defendant's collection efforts.

In sum, Plaintiff and the class have done better by way of this settlement than they could have hoped for at trial, *without* the attendant risks and delays of protracted litigation. These factors strongly support the Court's approval of the settlement.

### E.  The opinions of Plaintiff and her counsel also support preliminary approval.

Both Plaintiff and her counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of all class members. A strong initial presumption of fairness attaches to the proposed settlement because it was reached by well-qualified and experienced counsel engaged in arm's-length negotiations. *See Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their

names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *accord* Johnson Decl. at ¶¶ 7-12 (demonstrating proposed class counsel's extensive experience). As a result, Plaintiff's and her counsel's strong support for this settlement militates toward its approval.

### F. The settlement treats class members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note guides courts to consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim resulting from receipt of the same form of debt collection letter from Defendant. And as a result, the settlement provides that each participating claimant will receive an equal portion of the settlement fund. As such, this factor supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### III. This Court should approve the proposed notice campaign to class members.

Under Rule 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P.

23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means.

Here, the parties agree to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the class. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for an incentive award and reimbursement of her attorneys' fees and expenses; and (6) how to submit a claim and make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION § 21.312.

Importantly, the notice also will include a pre-addressed detachable claim form to be completed and returned to the administrator. The parties have made it as convenient as possible for class members to indicate their desire to participate in the settlement fund and to confirm the consumer nature of the debts Defendant sought to collect from them, as required by the FDCPA. GDR will post long-form class notices and other important case materials to its website for class members' review, where the materials will remain for the entirety of the notice and administration period.

In short, the parties' notice plan ensures that class members' due process rights are amply protected and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice").

### IV. This Court should schedule a final fairness hearing.

Finally, the last step in the approval process is a final fairness hearing at which this Court may hear all evidence and argument necessary to make its final determination. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at the hearing as well. The Court will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). Plaintiff requests that this Court set a date for a final fairness hearing at the Court's convenience, between 90 and 120 days after the Court's preliminary approval of the settlement.

### Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order certifying the proposed settlement class, appointing Plaintiff as the class representative and her counsel as class counsel, granting preliminary approval to the parties' settlement, and directing notice as described above. Defendant does not oppose this relief.

Dated:  July 20, 2020    Respectfully submitted,


        */s/ Jesse S. Johnson*
        James L. Davidson
        Florida Bar No. 723371
        Jesse S. Johnson
        Florida Bar No. 69154
        Greenwald Davidson Radbil PLLC
        7601 N. Federal Highway, Suite A-230
        Boca Raton, FL 33487
        Tel: (561) 826-5477
        jdavidson@gdrlawfirm.com
        jjohnson@gdrlawfirm.com

        *Counsel for Plaintiff and the proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2020, I filed a copy of the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send notice to all counsel of record.

        */s/ Jesse S. Johnson*
        Jesse S. Johnson